Adams *v.* Rivers.

[Essex General Term, July 7, 1851. *Willard, Hand* and *Cady,* Justices.]

---

### ADAMS vs. RIVERS.

Where the complaint, in a justice's court, is so drawn that the defendant can set up title in his answer, and on giving the requisite security oust the justice of his jurisdiction; but he omits to set up title, the justice retains his jurisdiction, and the defendant will be precluded from drawing it in question, on the trial.

The owner of a village lot bounded by a street is *prima facie* the owner, to the centre of the street.

When an entry, authority or license, is given to any one by law, and he abuses it, he is a trespasser *ab initio;* but when the entry, authority or license is given by another, and the party abuses it, he may be punished for the abuse, but will not be a trespasser *ab initio.*

In order to make a man a trespasser *ab initio* when the law has given the entry, &c., the acts of abuse must be of such a character as to be the subject of a trespass, if there were no license.

An act of omission, or words of vituperation merely, will not make a man a trespasser *ab initio.*

A person is a trespasser who, instead of passing along on the side walk of a street, stops on it, in front of a man's house, and remains there, using towards him abusive and insulting language.

THIS action was brought in a justice's court, in March, 1849, by summons. The plaintiff declared, for that he was in possession of the premises bounded by streets on two sides, and

Adams *v.* Rivers.

that he was in the constructive possession to the centre of each street, subject only to a public easement; that the defendant wrongfully came upon the side walk of the plaintiff, and there remained, using offensive, vulgar and vile language towards the plaintiff, and refusing to depart. The second count describing another lot in his possession, bounded on another street, with buildings and piazza thereon; and alledging that the defendant wrongfully came upon the plaintiff's side walk of that lot, and upon his piazza, on divers days, and remained thereon, using low, vulgar, vile, and abusive language towards the plaintiff, and refusing to depart.

And in a third count it was alledged that on the first day of May, 1843, and on divers days thereafter, the defendant wrongfully broke and entered another close of the plaintiff's, remained there a long time, treading about upon his side walk, and upon his piazza, using offensive and abusive language towards plaintiff, in all, to his damage of fifty dollars; which complaint was verified, &c. The defendant's answer denied the entry, or that the plaintiff was in the constructive possession to the centre of the streets, or the side walks first mentioned in the complaint; denied that the boundaries of the lot extended to the centre of the street; denied the unlawful entry upon the premises, side walk and piazza; or that he wrongfully remained there. It also denied the plaintiff's actual or constructive possession of side walks and streets to the centre; denied the wrongful entry, or remaining upon the side walks or piazza and abusing the plaintiff after having been directed to depart; alledged that if the defendant entered upon the side walks and piazza, he had license from plaintiff; and denied the abusive language, and alledged that it was better than plaintiff deserved. The plaintiff's replication objected to the defendant's answer being received without the written undertaking, &c. according to title six, part first, of the code. It also objected to that part being received which denied that the boundaries of the lot first mentioned extended to the middle of the streets, and denied that the plaintiff was owner of the street opposite said lot, without the undertaking referred to under the first objection. The replication

also insisted that that part of the defendant's answer which al-
ledged if he entered, he had the plaintiff's license, was defective
and a nullity, for not admitting the entries, &c.   And the
plaintiff further replied, denying the defendant's license to en-
ter, &c.

The cause was tried by a jury.   The plaintiff proved his cause
of action substantially as stated in his complaint, and rested,
when the defendant moved for a nonsuit, on three grounds.   1st.
That by the plaintiff's own showing, the title to land was in
question ; 2d. That the plaintiff had failed to show possession
of the *locus in quo.*   3d. That the *locus in quo* was a *public
street*, and that the plaintiff had not proved any damages.   The
defendant also moved to strike out the testimony of the conver-
sation and acts done by the defendant in the highways, com-
plained of, which motion was denied.   The defendant then gave
evidence, effecting no material change of the case, when the
cause was submitted to the jury, who found a verdict for the
plaintiff for $20 damages, upon which the justice rendered
judgment.

The defendant appealed to the county court, which court, on
the first day of January, 1850, reversed the judgment, on the
grounds that evidence was received, under objections, on the
trial, of the language and conversation of the defendant on the
side walks of public streets, whereas no action could be main-
tained for such a cause.   And also on the further ground, that
title to lands came in question upon the plaintiff's own showing ;
which was disputed by the defendant, and which were the only
grounds, as certified by the county judge.   Upon which the
plaintiff appealed to this court.

*H. Adams*, appellant, in person.

*Mitchell & Ely*, for the respondent.

*By the Court*, WILLARD, P. J.   The complaint was so drawn
that the defendant could have set forth in his answer, any mat-
ter showing that title would come in question, and thus by

Adams v. Rivers.

giving the requisite security, oust the justice of jurisdiction. He failed to do so, and therefore the justice retained jurisdiction of the cause, and the defendant was precluded in his defense, from drawing the title in question. The county court reversed the judgment of the justice upon the ground that title to lands came in question upon the plaintiff's own showing, which was disputed by the defendant. The county court supposed that the case fell under the 59th section of the code. In this the court was mistaken. If the title to land was brought in question at all, it appeared on the face of the complaint. The defendant having failed to take that objection at the joining of the issue, and to give the required security, was precluded from raising it as a defense on the trial. The 59th section is applicable only to those cases where the defendant was not apprised, by the nature of the action, that title would be in question, and where it first appears by the plaintiff's own showing, on the trial, that it is in question. In such case, if the defendant disputes the title, the justice is required to dismiss the action.

The plaintiff proved, *prima facie*, that he owned and possessed both the lots mentioned in the complaint. These lots being bounded by public streets, extended to the centre of the street. This is undoubtedly the legal presumption. In *Adams* v. *The Saratoga and Washington Railroad Co.* just decided by this court, (a) all the leading cases are collected. (2 *Kent's Com.* 433. 2 *John.* 363. 1 *Wend.* 270. 2 *Id.* 473. 8 *Id.* 106. 11 *Id.* 486. 4 *Paige*, 513. 12 *Wend.* 98. 15 *John.* 447. 2 *Smith's Leading Cases by Hare and Wallace*, 173, *and note.* 2 *Str.* 1004.) I shall assume that to be the law, without a more extended review of the cases. As was well remarked by Justice Cowen in *Pearsall* v. *Post*, (20 *Wend.* 121,) the relative rights both of owner and passenger in a highway, are well understood and familiarly dealt with by the law. Subject to the right of mere passage, the owner of the soil is still absolute master. The horseman can not stop to graze his steed, without being a trespasser; it is only in case of inevitable, or at least

(a) See post, 414.

accidental detention, that he can be excused even in halting for a moment.

This brings us to the main question in the case, whether the defendant by using abusive and insulting language to the plaintiff, became a trespasser from the beginning. The testimony authorized the jury to find that the defendant came on to the premises of the plaintiff, covered by the street, not in the legitimate use of the highway as a place of travel, but for the express purpose of abusing him. The opprobrious language used by the defendant was not actionable as slanderous. It was highly provoking and tended directly to a breach of the peace. It was received in evidence merely to show that the defendant was a trespasser, having forfeited his privilege by a gross abuse of it; and not indirectly to recover damages before the justice, for actionable words. It is conceded that the justice had no jurisdiction of an action of slander.

The general doctrine as laid down in *The Six Carpenters'* *case*, (8 *Co.* 146, *a*,) is that when an entry, authority or license is given to any one by the law, and he doth abuse it, he shall be a trespasser *ab initio :* but when an entry, authority or license is given by the party, and he abuses it, then he must be punished for the abuse, but shall not be a trespasser *ab initio.* In accordance with this distinction, it is held that if a man enter an inn or tavern, and subsequently commits a trespass ; if the lord who distrains for rent, or the owner for damage feasant, works or kills the distress ; or if he who enters to see waste, breaks the house, or stays there all night ; or if the commoner cuts down a tree, in these and the like cases the law adjudges that he entered for that purpose ; and because the *act which demonstrates it is a trespass,* he shall be a trespasser *ab initio.* (*Six Carpenters' case, supra.*)

In all the cases put by Coke, the acts complained of as abuses of the power, were distinct acts of trespass. And it seems to be the better opinion that a man can not become a trespasser *ab initio,* by any act or omission, which would not itself, if not protected by a license, be the subject of trespass. Thus in *Shorland* v. *Govett,* (5 *B. & C.* 485,) the sheriff's officer

justified a trespass under a *fi. fa.*, and it was held that a demand by the officer of more than was due by the warrant, did not make him a trespasser from the beginning. The reason is, that the original levy was lawful, and extortion is not an act for which trespass will lie. In *Gates* v. *Lounsbury*, (20 *John.* 429,) Spencer, Ch. J. says, that where an act is lawfully done, it can not be made illegal *ab initio*, unless by some positive act incompatible with the exercise of the legal right to do the first act. And the same learned judge in *Gardiner* v. *Campbell*, (15 *John.* 402,) recognizes the distinction in *The Six Carpenters' case*, between the *actual and positive* abuse of a thing, taken originally by authority of the law, and a mere *nonfeasance*, such as a refusal to deliver an article distrained. And Bronson, J. affirms the same principle in *Hale* v. *Clark*, (19 *Wend.* 498,) that a mere nonfeasance will never make a man a trespasser from the beginning; some act is required to be shown. The same doctrine is recognized by elementary writers. (2 *Leigh's N. P.* 1445. 2 *Phil. Ev.* 197, 198. 1 *Smith's Leading Cases, by Hare and Wallace*, 165, 166.)

The case of *Adams* v. *Adams*, (13 *Pick.* 384,) establishes the doctrine that the *omission* of a distrainor to afford proper food and water to distrained cattle, made the distrainor a trespasser from the beginning. And in *Bond* v. *Wilder*, (16 *Verm. R.* 399,) the *neglect* of an officer to sell goods advertised under an execution, in pursuance of his advertisement, was held to work the same consequence. Both these cases are believed to be a departure from the English law, and they certainly are not in harmony with the New-York cases.

Savage, Ch. J. in *Allen* v. *Crofoot*, (5 *Wend.* 509,) does not admire the distinction taken by Coke between the abuse of a license granted by law, and a license granted by the party. And he thinks a better reason was given for it in Bacon's Abridgment, title Trespass B. Where the law has given an authority, it is reasonable that it should make void every thing done by the abuse of that authority, and leave the abuser as if he had done every thing without authority. But where a man, who was under no necessity to give an authority, does so, and the

person receiving the authority abuses it, there is no reason why the law should interfere to make void every thing done by such abuse; because it was a man's folly to trust another with an authority who was not fit to be trusted therewith.

No case has been cited showing that a man will forfeit a license granted by law, by the use of vituperative language; and none such have fallen under my notice. In all the cases, except *Adams* v. *Adams* and *Bond* v. *Wilder*, some positive act, such as if done without authority would be a trespass, has been held essential to make the party a trespasser *ab initio*. These cases may have been decided upon local statutes.

It is quite clear that the uttering abusive language was not an act for which the plaintiff could maintain trespass against the defendant. Had such language been uttered in an inn by a guest to the landlord, it would have afforded just cause for the latter to expel the former. So doubtless in *The Six Carpenters' case*, their refusal to pay for their room, though it did not make their original entry unlawful, would have justified the landlord in ordering them to depart. (*Story on Bail.* 484.)

The right of an innkeeper to refuse to receive a guest, or to order him to depart, rests on reasons peculiar to that relation. (*Id.* 484.) An innkeeper is bound to receive all travelers and sojourners who are willing to pay a price adequate to the sort of accommodation provided, and who come in a situation in which they are fit to be received. (3 *Barn. & Ald.* 283.)

"A highway," says Swift, justice, in *Peck* v. *Smith*, (1 *Conn. Rep.* 132,) "is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all the acts necessary to keep it in repair. This easement does not comprehend any interest in the soil, nor give the public the legal possession of it." In this state, since the adoption of the revised statutes, the public, under certain circumstances, may have a qualified right of pasturage, by certain animals, at certain seasons. (*Griffin* v. *Martin*, 7 *Barb.* 297.) The use of the highway, by any person for any purpose other than to pass and repass, is a trespass upon the person who owns the fee of the

Adams *v.* Rivers.

road. (1 *New-Hamp. Rep.* 16. *Babcock* v. *Lamb*, 1 *Cowen*, 238. *Jackson* v. *Hathaway*, 15 *John.* 447.) But no act will amount to a trespass unless the same act would be a trespass if committed on any other land of the plaintiff. Language, however licentious and abusive, is not a trespass, within the appropriate meaning of that term. Nor can a party be made a trespasser upon the freehold of the adjoining owners of the soil, by the uttering of abusive language as he passes along the road. A person who disturbs the public peace as he passes along the road, by singing obscene songs and using boisterous and obscene language, may be liable to be punished at the suit of the public, for a breach of the peace; but he is not liable in trespass at the suit of the adjoining owners. These acts, however censurable, are not acts of *trespass.*

The foregoing remarks show that if the action was sought to be maintained on the ground that the defendant became, while passing on the road, a trespasser from the beginning, by reason of his abusive language to the plaintiff, the action can not be maintained. The county judge must have taken this view of the case : for one of the reasons for the reversal is that evidence was received by the justice, under objections, of the language and conversation of the defendant on the side walks of public streets, and in his judgment no action could be maintained for that cause. It is presumed that the county judge supposed that the abusive language was proved, not as a substantive cause of action, but as showing that the defendant had forfeited his right to be in the highway on the plaintiff's premises ; in short that he was a trespasser *ab initio*, by reason of his abusive conduct.

But there was another view of the case which seems to have been overlooked. The defendant had no right to be upon the plaintiff's piazza after he was ordered to depart. Perhaps he had no right to be there at all. That was a distinct act of trespass. The language of the defendant while committing a trespass was proper to qualify the act, and show with what spirit it was done. (*Merest* v. *Harvey*, 5 *Taunt.* 442.)

The defendant also committed a trespass while standing on

the side walk by the plaintiff's lot where he lived, and using towards him abusive language.   While so engaged he was not using the highway for the purpose for which it was designed, but was a trespasser.   He stood there but about five minutes. It was not shown that he stopped on the side walk for a justifiable cause; on the contrary, it was rendered probable that it was for a base and wicked purpose.   It was, therefore, a trespass. Suppose a strolling musician stops in front of a gentleman's house, and plays a tune or sings an obscene song under his window, can there be a doubt that he is liable in trespass?   The tendency of the act is to disturb the peace, to draw together a crowd, and to obstruct the street.   It would be no justification that the act was done in a public street.   The public have no need of the highway but to pass and repass.   If it is used for any other purpose not justified by law, the owners of the adjoining land are remitted to the same rights they possessed before the highway was made.   They can protect themselves against such annoyances, by treating the intruders as trespassers.

The action therefore was strictly supported by the evidence. The jury were not limited to mere compensatory damages, and the court could not have interfered, had the recovery been five times as much as it was. (*Merest* v. *Harvey*, 5 *Taunt*. 442. *Cook* v. *Ellis*, 6 *Hill*, 465.   *Hitchcock* v. *Whitney*, 4 *Denio*, 461.)

The judgment of the county court must be reversed, and that of the justice affirmed.

[ESSEX GENERAL TERM, July 7, 1851.   *Willard, Hand* and *Cady*, Justices.]