(30 Misc. Rep. 675.)

JOHN D. PARK & SONS CO. v. NATIONAL WHOLESALE DRUGGISTS' ASS'N et al.

(Supreme Court, Special Term, New York County. March, 1900.)

MONOPOLIES—RESTRAINT OF TRADE—PATENT ARTICLE.
    Where numbers of persons variously carrying on separate businesses constituted an unincorporated company, and by agreement among themselves refused to sell certain patent medicines owned and manufactured by some of their number unless the purchaser would comply with certain rules of the association, such agreement was not unlawful, or in restraint of trade, but proper as a protection to inventors' rights.

Action by the John D. Park & Sons Company against the National Wholesale Druggists' Association and others. Demurrer to complaint. Sustained.

Swayne & Swayne (Henry T. Fay, of counsel), for plaintiff.

Robinson, Biddle & Ward (Henry G. Ward and A. Leo Everett, of counsel), for defendants.

RUSSELL, J. The demurrer to the complaint fairly presents the legal questions at issue, for the events are fully narrated which form the statement of facts on which the plaintiff relies to justify the charge that the defendants have conspired to seriously impair the plaintiff's business, and destroy its power to purchase and sell proprietary drugs and medicines, and are proceeding in the execution of their conspiracy. The plaintiff is a corporation doing business at Cincinnati, succeeding a partnership composed mainly of those now interested in the corporation, and has, with its predecessor, for many years conducted a wholesale business in drugs and medicines, both of the proprietary and free lots, and here seeks injunctive relief. The defendants, 125 in number, variously carry on separate businesses from New England to California as manufacturers or jobbers or wholesalers of proprietary drugs and medicines in part, and are united by the common tie of the association called the National Wholesale Druggists' Association, which is an unincorporated company existing only by the voluntary union of the manufacturers, jobbers, and wholesalers for the common action and benefit of all its members. The grievance of the plaintiff consists in its inability to directly buy so that it can sell proprietary goods which are those

manufactured by some of the defendants from recipes owned by those defendants, possibly protected by trade-marks, and which are commonly called "patent medicines." Its custom is seriously impaired as a natural consequence by the inability to supply customers with the entire range of patent medicines as well as free drugs. And it is quite apparent that, if the rules of the association are effective to protect its own members, they are also effective to prevent the freedom of the plaintiff to purchase and sell such articles. The inability of this plaintiff to compete is primarily due to its own volition. No charge is made by it of a refusal to sell goods under the same conditions as freely to it as to any one. The charge is that the plaintiff must conform to the rules of the association on the same basis as all seeking membership, or be an outcast in the commerce of these particular goods. No especial discrimination is made against the plaintiff not common or incidental to all without the pale, unless it may be that the vigorous efforts of plaintiff to break up the solidity of the association have induced precautionary measures by the latter, which have individualized it as an example, but which measures might have been taken against any in a similar case. It is, therefore, necessary to consider how far the owners of patent medicines, which no one else may make and sell in the combination or form devised by the owners, can guard their own powers of sale by limitations which are so far lawful as not to expose them to the charge of illegal restraint of trade, whether or not those limitations can be enforced as valid executory agreements between the different manufacturers, or between them, the jobbers, and wholesalers. It is not quite material whether these defendants have a contract binding between themselves if a united action on their part from common understanding and concerted effort works unlawful harm to the plaintiff. But it is equally clear that they do not have to plead an enforceable contract to protect themselves from the charge of wrong to one not claiming any rights or privileges from the contract or the rights on which it is based. This contract of the members provided that none would sell their proprietary articles, or allow the 10 per cent. commission and freight charges, to any one who would not conform to the rules; nor would they undercut the price fixed by the manufacturer owner. Is this a reasonable restriction upon the sale of the inventor's production, or is it in unlawful restraint of trade? Is the agreement of several vicious, while the refusal of one to sell would be justifiable? Shall the united action through each separate interest protecting itself be unlawful if designed solely for protection, and not for punishment? Is not the necessity of combination evident if the individual may control the price for which his article is to be sold? Will not, in such case, combination result in a larger and more unrestricted sale to the public than isolated action? Of course, all depends upon the right of the inventive manufacturer to utilize in some way the benefits of his own originative skill. I understand this right to be conceded; but it is apparent. He can refrain from selling below a given price in the honest or mistaken belief of the value to the public. He may lawfully insist that his purchaser

shall not cheapen the product by selling below a stated rate. He cannot prevent that purchaser from passing a good title to another for nothing, but he can close the door on that purchaser's procuring from his manufactory his product after violation of a fair agreement. With this power of protection he may use reasonable means to enforce it. He may join with others in similar need to accomplish, by concerted action, that which would be too burdensome, expensive, or impracticable to achieve alone, and without which concert his power to fix the price of his own product would be barren of good result. To do this, reciprocity of action is essential. If another agrees to share the expenses of detecting violations of faith in his purchasers, he must reciprocate. Any reciprocal agreement would be ineffective if the one could freely sell his own product to the breaker of faith with the other. Reciprocity of action, rightfully used, tends to promote and enlarge the sphere of trade, and every presumption favors such a design where the benefits to the manufacturer increase with the extension of the market.

These defendants are not dealing in the prime necessities of life, like food, fuel, or clothing. They may use the simples of nature which are free to all, and which may not be impounded by any form of monopoly endeavor. But the compounds, when protected by secrecy of manufacture or trade-mark association, are inventions valuable to the combiner, if the public, critical or credulous, believe in the utility of the product. These products, however, are not necessaries of existence. Hair restorers and liver pills may be deemed efficacious by those who use them; but the combinations of ingredients in the particular forms adopted by the remedy discoverer are not yet recognized as staples of health, or even commerce, and the earnest seeker for them must yet buy them under the reasonable requirements of the inventor, and cannot demand the sale under the freedom of competitive offerings. With the care which should always be used in referring to judicial opinions when the mind is concentrated upon the application of general rules to particular facts,—a care needed especially in the analysis of contracts limiting the power of free trading because the lines of legal interference are not plainly marked as yet,—we may note briefly some pertinent cases digesting the principle applied. In Walsh v. Dwight, 40 App. Div. 513, 58 N. Y. Supp. 91, it was decided that an agreement to sell at a certain price the manufacturer's soda and other similar goods was not unlawful. Our court of appeals decided in Lough v. Outerbridge, 143 N. Y. 271, 38 N. E. 292, 25 L. R. A. 674, that a common carrier might give privileged rates to some, and refuse others. The supreme court of the United States held in Anderson v. U. S., 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 300, that an exchange association had the reasonable privilege to adopt resolutions restricting the persons with whom sales or purchases might be made and contracts and rates of employment effected. A combination of insurance companies excluding business intercourse with nonmembers is not illegal. Continental Ins. Co. v. Board of Fire Underwriters (C. C.) 67 Fed. 310 (McKenna, Circuit Justice). But a restriction of general freedom to pursue a law-

ful calling unless a person becomes a member of an association is unlawful. Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802. And agreements to control price and destroy competition in necessities like food or fuel are unlawful. Judd v. Harrington, 139 N. Y. 105, 34 N. E. 790; People v. Sheldon, 139 N. Y. 251, 34 N. E. 785, 23 L. R. A. 221; People v. Milk Exchange, 145 N. Y. 267, 39 N. E. 1062, 27 L. R. A. 437. The sacred right of the toiler to earn the means of subsistence for himself and dependents is, and always will be, recognized; the freedom of competitive purchase of the necessaries of life will be maintained; trade and commerce will not be shackled by monopolies designed to extort unnatural prices; but inventive skill, even though applied to medicinal compounds, may yet have protection from outlawry if the inventor reasonably uses his property rights, and does not trespass into another's privileges. I do not find from the complaint the use of unlawful means to execute the lawful agreement. No instance is stated of any watching which interferes with plaintiff's proper business. The committee of the association may not have judicial powers; but any agent may act for an unwieldy association, if such action is within the lines of the rules, and no specific deviation prejudicial to plaintiff is averred. Nor does plaintiff set forth his occasional conformity to the rules of the association as a cause for a rightful demand of the benefits of participation in the privileges of that body. These isolated instances are rather stated by way of confession and avoidance. Plaintiff plants itself firmly on the illegality of the agreement and combination, repudiating their lawfulness, and seeking their destruction. Nor do I deem the privilege of amendment useful. Three years of litigation in this action have presented the original complaint to the scrutiny of counsel and court. The amended complaint states fully the facts relied on, and, as counsel for both sides seem to believe, this case may well be decided upon the facts as stated by plaintiff in its complaint. Judgment for defendants, sustaining demurrer, with costs.

Demurrer sustained, with costs.