(39 Misc. Rep. 48.)

FOSTER et al. v. RETAIL CLERKS' INTERNATIONAL PROTECTIVE ASS'N et al.

(Supreme Court, Special Term, Onondaga County.   October, 1902.)

1. INJUNCTION—PICKETING STORE—ILLEGALITY.
     An injunction will not be granted at the suit of the proprietors of a store to enjoin sympathizers with labor unions from picketing the store and circulating in its vicinity printed cards asking union men to keep away from it, and endeavoring to keep them and the public away by persuasion and peaceable means.

---

¶ 1. See Injunction, vol. 27, Cent. Dig. § 174.

2. SAME.

    The fact that a number of persons co-operated in the picketing of a store and persuading the public to keep away from the same does not render their acts illegal.

3. SAME—INTIMIDATION.

    Sympathizers with labor unions will be enjoined from entering a store declared "unfair" by the unions for the purpose of interfering with trade or customers or obstructing access to it by any physical means, and from using threats, violence, or intimidation to prevent intending customers from entering the store and trading there.

4. SAME—VERIFIED COMPLAINT.

    Where, on motion for an injunction, a verified complaint instead of an affidavit is used, only the positive allegations therein, and those made on information and belief, where the sources of the information and the grounds of the belief are given, can be taken to be true.

Action by Arthur L. Foster and Harry R. Hinman against the Retail Clerks' International Protective Association and others. Order to show cause why a temporary injunction should not be granted. Injunction issued.

William Kennedy, for the motion.

Wilson, Cobb & Ryan, opposed.

ANDREWS, J. An order was heretofore granted that the defendants show cause why they should not be enjoined during the pendency of the action from picketing the plaintiffs' store, from publishing or circulating a certain card declaring the plaintiffs unfair, and other similar printed matter, from in any way or by any means, overt in character, interfering with their business or with persons who would be likely to trade with them, and from doing any act in the vicinity of their premises whereby travel upon the sidewalk or street adjacent thereto should be interrupted. This order, and the papers upon which it was granted, were served in due time upon the defendants Lind and Lavine, and they appeared on the day specified therein. No service was made upon any of the other defendants, and as to them the proceeding is dismissed.

In disposing of the motion, in so far as it affects the defendants Lind and Lavine, it is necessary to determine the facts established by the papers before me. For this purpose, while a verified complaint may be treated as an affidavit on a motion for an injunction, its evidential force must be tested by the same rule that is applied to other affidavits. Only positive allegations and allegations on information and belief, where the source of the information and the grounds of the belief are given, can be taken as true. Clark v. Publishing Co., 40 App. Div. 405, 57 N. Y. Supp. 975.

So, too, epithets are not facts. The question is not whether an affidavit designates a certain act as a threat, or as intimidation, as a conspiracy, or as malicious, that is important, but whether the facts stated show that the act deserves such a designation. Association v. Cumming, 170 N. Y. 315, 63 N. E. 369. It appears that the plaintiffs are copartners in the clothing business under the firm name of Foster, Hinman & Co. Their store is at the northwest corner of South Salina and Fayette streets, in the city of Syracuse.

They have a valuable stock of goods, and have a large number of clerks and salesmen, who apparently have been satisfied in the past and have been content with their work, the condition under which it has been performed, and their wages. There exists in the city of Syracuse an unincorporated association known as the Retail Clerks' Local Union No. 243. It is a branch of the Retail Clerks' International Protective Association, also an unincorporated body, of which Mr. John R. O'Brien is president. The object of the association is to improve the condition of its members as to wages and hours of work and other matters. The local union is affiliated with the Central Trades and Labor Assembly of Syracuse. This association is also unincorporated, and its object is to promote the general interests of laboring men. It was claimed that the plaintiffs did not conform to the custom generally existing as to the hours of opening and closing their store. Their own clerks do not seem to have made objection, but in June, 1902, an agent of the Retail Clerks' Local Union called upon them, and endeavored to obtain an agreement with them in this regard. He failed. Thereupon the local union passed a resolution declaring the plaintiffs unfair, and referred the matter to the Central Trades and Labor Assembly. The latter body indorsed this action, provided that a grievance committee then appointed should fail to make a satisfactory settlement. This committee interviewed the plaintiffs, and tried to induce them to sign an agreement containing various provisions as to wages and working hours, but this the plaintiffs refused to do. Thereupon the Retail Clerks' Local Union caused the store to be picketed, and printed cards were provided for distribution. These cards were in the following form:

"Unfair.

"Foster, Hinman & Company,

"Kirk Block, have been declared unfair by the Retail Clerks' Local Union 243, and this action has been indorsed by the Trades Assembly. Union men keep away."

Just what was done subsequently is in dispute. The defendants admit that they stationed themselves in front of or near the plaintiffs' store, and attempted to persuade passers-by not to patronize the plaintiffs. They say this was done quietly, without intimidation, without threats, without collecting crowds, or entering upon the plaintiffs' premises. This they say they have a right to do. They further deny the existence of any conspiracy. The plaintiffs, on the other hand, claim not only that there was such picketing as has been stated, but that it was accompanied by threats, by intimidation, by force, by the collection of crowds in such manner as to impede access to their store, and by the entry of defendants upon their premises for the purpose of interfering with customers. All this they say was the result of a conspiracy among the defendants, and has caused them great loss.

The defendants named in the complaint are the Retail Clerks' International Protective Association, John R. O'Brien, its president, the Trades Assembly of Syracuse, John M. Hilsdorf, George Sobel, Carl Heist, Bert Lind, and Charles Lavine. As has been said, none

was served with papers herein except the last two, and no injunction in any event will be granted against the others. But this fact does not necessarily prevent the consideration of their acts. If wrongful acts have been committed by others, and these acts were the result of a conspiracy in which Lind and Lavine joined, they are responsible therefor. Rourke v. Drug Co., 75 App. Div. 145, 77 N. Y. Supp. 373.

As to the Retail Clerks' International Protective Association and its president, O'Brien, there is clearly no sufficient evidence of their connection with the matter.

But Lavine, Lind, Hilsdorf, and Sobel concededly were engaged in picketing the store. Heist makes no denial that he was engaged in the same work. In view of all the papers,—the denials and their form as well as the charges,—it must be held that whatever any of them did was done as the result of a preconceived design and agreement. If what they did was wrongful, they conspired together to do this wrong. The fact of picketing and the fact of the publication and distribution of the card that has been referred to being admitted, the dispute is as to the other allegations. Just how far Lavine, Lind, Hilsdorf, Sobel, and Heist went in the execution of their project is in considerable doubt, and I shall not attempt to determine here definitely just what the truth may be. This much is clear, however: Whatever may be said of simple picketing, where only persuasion is used, certain things cannot have been done without infringing the rights of the plaintiffs. The defendants have no right to enter upon their premises except for the bona fide purposes of trade. If they do, they are trespassers. If the plaintiffs own to the center of the street, the defendants have no right to station themselves in front of their store, and there distribute circulars such as the one in question. If they do this, they are also trespassers. Adams v. Rivers, 11 Barb. 390. The defendants have no right to obstruct access to the store in question. If they do, they commit a nuisance. The defendants have no right to so act as to collect crowds, and thus obstruct movement along the sidewalk at or in the neighborhood of the store. This is likewise a nuisance. The defendants have no right to use force or violence, or threats or intimidation, for the purpose of preventing passers-by on the highway from entering the store and trading with the plaintiffs.

It should be remembered in this connection that to constitute intimidation it is not necessary that there should be any direct threat, still less any actual act of violence. It is enough if the mere attitude assumed by the defendants is intimidating. And this may be shown by all the circumstances of the case, by the methods of the defendants, their circulars, their numbers, their devices. People v. Wilzig, 4 N. Y. Cr. R. 403; People v. Kostka, Id. 429. Such acts being illegal, an agreement to accomplish them is an illegal conspiracy, and where they are continuous and repeated, and are injurious to a third party, their continuance will be enjoined by a court of equity.

As has been said, it is not at all certain as to just what the defendants have done. They deny that they have done any of these acts, and, as I understand it, disclaim the right to commit them. But in

a case like the present the rule which they invoke that when all the equities of a complaint are denied in the answer an injunction will not be granted pendente lite does not apply. It only applies when the litigants claim adversely in respect to property, or the right to do some act in connection therewith, and the asserted right of the plaintiffs seems doubtful. The defendants Lavine and Lind cannot be harmed if they are enjoined from doing what they have no right to do, and, moreover, from doing what they say they have not done and do not desire to do.

A most serious and interesting question arises, however, when it is sought to enjoin the defendants from simply picketing the store in question. That is, do they commit any wrong upon the plaintiffs when they combine with others peaceably, by persuasion only, to induce persons upon the street to refrain from trading with the plaintiffs? It must first be determined whether such an act on the part of an individual is illegal. At the very threshold of the case we meet a difficult question, which has been discussed, indeed, in Rogers v. Evarts (Sup.) 17 N. Y. Supp. 264, and Association v. Cumming, 170 N. Y. 315, 63 N. E. 369, but which has, so far as I know, never been decided in this state.

It is a truism that there are many acts which directly injure the property of another, yet which do not give rise to a cause of action. The phrase damnum absque injuria was invented to meet such cases. A. may make such erections upon his land as he chooses, notwithstanding the consequent injury to his neighbor. B. may by fierce and continuous competition ruin a business rival. C. may advise his friend to patronize one physician rather than another. Of course, all these matters have their limits. If A. goes too far, he may create a nuisance. If B.'s competition is too strenuous, he may be guilty of fraud. If C. says too much, he may become liable for slander. In the last analysis, this freedom to commit injury and the bounds imposed upon it are regulated by what has been thought to be public policy. The injury itself is never good, but to suffer it may entail less evil than to attempt to check it by legal means. On the whole, it may be best that A. should be given great freedom in the management of his property. It may be best that there should be allowed the widest possible competition between B. and his competitors. The freedom of C. to advise or persuade, perhaps, should not be restricted.

But does it ever happen that the intent with which A. or B. or C. act is an element which differentiates what they may from what they may not do?

Concededly it does not in the case of A. and B. But it has been sometimes said that in the class of cases represented by C. it does so; that if C. advises or persuades his friend for the purpose of benefiting one or the other his act is rightful; if simply for the purpose of injuring the physician, it is illegal; if C. has an interest to serve in giving his advice, he has a right to give it; if not, he has none. Judge Oliver Wendell Holmes has put this view in the strongest form in an article in 8 Harvard Law Review, p. 1, and also in his dissenting opinion in Vegelahn v. Guntner, 167 Mass. 92, 44 N. E. 1077, 35 L. R. A. 722, 57 Am. St. Rep. 443, and in Plant v. Woods,

176 Mass. 492, 57 N. E. 1011, 51 L. R. A. 339, 79 Am. St. Rep. 330. His position is that intentional injury inflicted upon another is prima facie wrongful. It may, however, be sometimes justified on grounds of public policy, and in rare cases whether it shall or shall not be justified may depend on the intent with which the act is done.

All admit that this would be an exception to the general rule. That rule clearly is that the law does not take into account motive as constituting an element of civil wrong. But there are exceptions. Malicious prosecution (Clerk & L. Torts [2d Ed.] 527), slander and libel in cases where privilege exists, actions by husband against one who harbors a wife (Id. 190), or by a master against one who harbors a servant (Id. 185), and actions for slander of title (Id. 548), all depend on intent. Why they should so depend it may be difficult to explain. But in Allen v. Flood [1898] App. Cas. 1, it is said that in each the basis of an action is the doing of an act which the law already regards as illegal, but that the doer of the act is protected from its usual consequences in the event that he was actuated by an honest desire to perform a public or private duty. This is said in answer to an argument in favor of a position similar to that assumed by Judge Holmes, but it would rather strengthen his position by showing that cases more or less analogous exist.

It seems to me, however, that the fault contained in the proposition lies in the assumption with which it starts. Is there any reason for saying that intentional injury to another is always, as a matter of fact, wrongful? Shall we say, for instance, as Judge Holmes does, that one who builds a spite fence upon his property commits a legal wrong prima facie, but that he is justified because he is the owner of the property and public policy requires that he should have a free hand? If this be so, what would happen if a spite fence was erected by a mere trespasser? Would he be liable not only to the owner of the land for his trespass but to the neighbor for the injury caused by the fence? Are not the supporters of this doctrine struck by the malicious and unreasonable character of many injuries for which the law heretofore has afforded no redress, and do they not seek to cover them by extending the doctrine of intent beyond the few and the exceptional cases in which it had hitherto received recognition? The truth in such questions can be answered only by the use of the historical method. Our law is not a philosophical system. It is a growth, having its origin in the customs and usages of half barbarous tribes. At first declaring few rights and possessed of fewer remedies, it became with the advance of civilization more detailed and complex. Forced by the needs of the time, influenced by the theories of the Roman law, led by reasoning from one position to another, seeking to enforce the public good and the public welfare, courts and legislatures have gradually built up the system as it to-day exists. And as is necessarily the case with such a past, the result is not always perfect. The logic is sometimes defective. The views of public policy adopted are not always so wise and so broad as to meet the requirements of to-day. It is a mistaken idea to assume that because a rule should be so, therefore it is. It is, if our predecessors have adopted it. Practically it is better to remember the old definition that malice in its legal sense

"means a wrongful act done intentionally, without just cause or excuse," and to limit the theory of intent as an element of civil wrong to those instances where it has been enforced in the past.

As is said by Lord Watson in Allen v. Flood, otherwise,

"One who committed an act not in itself illegal, but attended with consequences detrimental to several other persons, would incur liability to those of them whom it was proved that he intended to injure and the rest of them would have no remedy."

It would always be a question of fact for the jury whether an act otherwise legal was committed with an evil intent. The step should not be taken unless justified by clear weight of authority, and I am not willing to hold that a request not to patronize a certain dealer may be legal if made by a person in one state of mind or holding one relation to him and illegal in another.

The decision of this question becomes necessary for the determination of the case at bar because neither Lavine nor Lind are or were employés of the plaintiffs. Neither are they members of the clerks' union, and so personally interested in the lot of the retail clerks. They both belong to the Boot and Shoe Workers' Union, and the utmost, apparently, that can be said is that as workingmen they sympathize with the efforts of fellow workmen of a different class and engaged in a different occupation to improve their condition. They have not sufficient interest in the result to justify their act if their act requires justification. Their interest is too remote and too uncertain.

It becomes a question, therefore, whether or not, apart from the question of motive, picketing is in itself illegal, and upon this question the courts in the various states in this country and the courts in England have widely differed. Some have said that picketing in itself constituted a threat and intimidation, and is therefore unlawful. Others that a man has a right to conduct his business in the way that pleases him best, without obstruction or molestation, and that an attempt by picketing to compel him to agree to this or that demand is an unlawful interference with this right, and therefore should be stopped. I do not agree with either of these contentions. There is nothing in a mere request not to deal which implies a threat to do an unlawful injury. Whether it does or does not depends on the circumstances of each case,—upon what is said and how it is said. Nor is there any legal rule which holds that I may not request my family not to trade with A. or B. for any reason that seems to me good, however petty and insufficient the reason may seem to others. I have the right to make the same request of a relative or friends, and I have the equal right to make the request of strangers by word of mouth or in writing. Nor is the place where I make the request important. If I make it to one just entering A.'s store, the loss to A. is more obvious, though no greater, than if I make it to an intending customer a mile away. To quote the statement of Lord Davey in Allen v. Flood:

"I do not doubt that every one has a right to pursue his trade or employment without molestation or obstruction if these terms are used to imply some act in itself wrongful. This is only a branch of a much wider proposition, namely, that every one has the right to do any lawful act he pleases without molestation or obstruction. But if it be intended to assert that an

act not otherwise wrongful always becomes so if it interferes with another's trade or employment, and needs to be excused or justified, I say that such a proposition, in my opinion, has no solid foundation in reason to rest upon."

Mere picketing, therefore, if it is peaceful, if there is no threat or intimidation, if it is confined to simple persuasion, I do not regard in any sense as unlawful, whatever may be the motive of the picketers.

Finally, assuming that picketing by an individual is lawful, does it become unlawful because done as the result of an agreement between two or more? Many courts, and courts entitled to the greatest respect, have held that it does. But the reasoning upon which such a conclusion is based seems unsatisfactory. By some it is said that the reason is that the combined acts of several are likely to be more harmful than the act of one. "A man may encounter the acts of a single person, yet not be fairly matched against several." But why should this consideration convert a right into a wrong? It may affect the remedy. It may justify, for instance, an injunction to protect against a conspiracy to libel, notwithstanding the rule that a libel by an individual may not be enjoined. It can hardly do more. Others have said that the reason is based upon the maxim "De minimis non curat lex." The injury done by one is so small that the law will not regard it. But is that so? Is the injury done by one necessarily, and this is the test, so trivial that it need not be recognized by the courts? Might not a man of great influence conceivably work much more harm than a combination of others less well known? The whole theory is, I think, erroneous. A conspiracy is an agreement to do an unlawful act or to do a lawful act by unlawful means. There can be no conspiracy if the act aimed at is lawful and if the means employed also are lawful. Two or more persons may agree to do what each one of them may lawfully do.

"What one may lawfully do singly, two or more may lawfully agree to do jointly. The number who unite to do the act cannot change its character from lawful to unlawful. The gist of a private action for the wrongful act of many is not the combination or conspiracy, but the damage done or threatened to the plaintiff by the acts of the defendants. If the act be lawful, the combination of many to commit it may aggravate the injury, but cannot change the character of the act." Manufacturing Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. Rep. 319.

The following cases in this state give more or less support to the views stated in this opinion: Levy v. Rosenstein (Sup.) 66 N. Y. Supp. 101; Krebs v. Rosenstein, 31 Misc. Rep. 661, 66 N. Y. Supp. 42; Cohen v. Workers, 35 Misc. Rep. 748, 72 N. Y. Supp. 341; Rogers v. Evarts (Sup.) 17 N. Y. Supp. 264; Harvester Co. v. Meinhardt, 9 Abb. N. C. 393; People v. Wilzig, 4 N. Y. Cr. R. 403; People v. Kostka, Id. 429; Beattie v. Callanan, 67 App. Div. 14, 73 N. Y. Supp. 518; Davis v. Zimmerman, 91 Hun, 489, 36 N. Y. Supp. 303; Sinsheimer v. Workers, 77 Hun, 215, 28 N. Y. Supp. 321; Association v. Delaney, 48 App. Div. 623, 62 N. Y. Supp. 750; Association v. Cumming, 170 N. Y. 315, 63 N. E. 369. Even in this state, however, the cases are far from unanimous. In Gilbert v. Mickle, 4 Sandf. Ch. 357, the vice chancellor restrained the defendant from causing a placard warning the public to beware of mock auctions to be paraded or posted in the public streets adjacent to the prem-

ises of the plaintiff, who was an auctioneer. He conceded that the sidewalks were not blocked and that no crowds were collected, but he held that the defendant's acts constituted a nuisance. In view of the law of nuisance, as now developed, this position could probably not be maintained to-day.

There is also a class of cases of which Davenport v. Walker, 57 App. Div. 221, 68 N. Y. Supp. 161; Davis v. Engineers, 28 App. Div. 396, 51 N. Y. Supp. 180; People v. Walsh, 15 N. Y. St. Rep. 17; Connell v. Stalker, 20 Misc. Rep. 423, 45 N. Y. Supp. 1048; People v. Smith, 5 N. Y. Cr. R. 513; and, finally, Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496,— are examples. They hold ·that an attempt to coerce other workmen to join an association under penalty of loss of their position and loss of employment is illegal. In so far as "coercion" means simply persuasion addressed to employers and refusal to work with non-union men, these cases are overruled by Association v. Cumming, cited above.

There is a second class of cases, of which Dueber Watch Case Mfg. Co. v. E. Howard Watch & Clock Co., 3 Misc. Rep. 582, 24 N. Y. Supp. 647; People v. Duke, 19 Misc. Rep. 292, 44 N. Y. Supp. 336; Rourke v. Drug Co., 75 App. Div. 145, 77 N. Y. Supp. 373; and Park & Sons Co. v. National Wholesale Druggists' Ass'n, 30 Misc. Rep. 675, 64 N. Y. Supp. 276; Id. (Sup.) 50 N. Y. Supp. 1064,—are examples. In all of these cases the acts of the defendants in refusing to deal with the plaintiff and preventing others from doing so were in pursuance of a conspiracy in restraint of trade, and therefore illegal.

In regard to Association v. Walsh, 2 Daly, 1, it can only be said that the dictum of Judge Daly is not in accord with the current of authority. In People v. Barondess, 133 N. Y. 649, 31 N. E. 240, where the judgment of the general term was reversed upon the dissenting opinion of Judge Daniels, 61 Hun, 571, 16 N. Y. Supp. 436, an attempt was made to extort money by threats and fear. This was plainly illegal, whether the threat was to do a legal or illegal act.

There will be no advantage in citing the English cases or the cases in the neighboring states. Every variety of views and doctrine can be found. Authority is abundant for almost every proposition; but it is believed that the views here expressed are in line with the authoritative decisions in the courts of this state.

An order may therefore be entered enjoining and restraining the defendants Lind and Lavine, their servants, agents, coadjutors, and assistants, from entering upon the premises of the plaintiffs for the purpose of interfering with or interrupting their trade or customers, or from in fact, while upon such premises, interrupting or interfering with such trade or customers; from obstructing access to the plaintiffs' store by any physical means; from so acting as to collect crowds in front of or adjacent to said store, which crowds shall obstruct travel upon the streets or sidewalks at or in the neighborhood thereof; and, finally, from the use of threats, violence, or intimidation with the intent of preventing travelers upon the highway or intending customers of the plaintiffs from entering the store of

the plaintiffs or trading with them, or whereby such result is attained.

Ordered accordingly.