Louis Manker, Plaintiff, *v.* Bakers', Confectioners' and Waiters' International Union of America, Local 144, and Others, Defendants.

Supreme Court, Westchester County, March 31, 1927.

**Trade unions — picketing — action to enjoin members of labor union on strike from picketing — temporary injunction denied in absence of proof of acts of violence.**

Plaintiff, against whom the defendant union is maintaining a strike and in conjunction therewith has caused its members to picket in front of plaintiff's business, is not entitled to a temporary injunction restraining said defendant

or its members from patrolling, parading or marching upon the sidewalks in front of said premises, in the absence of proof that defendants have indulged in acts of violence. A further ground for the denial of plaintiff's application for a temporary injunction, is the fact that, inasmuch as plaintiff's place of business is but a short distance from a police station and a court of competent criminal jurisdiction, it is but fair to assume that if defendants commit violent acts they will be prosecuted.

Motion by plaintiff for temporary injunction.

*David Gorfinkel,* for the plaintiff.

*Klein & Klein,* for the defendants.

Lynch, J. The plaintiff seeks a temporary injunction restraining the defendants, their agents and servants, from patrolling, parading or marching up and down or back and forth upon the sidewalk in front of the plaintiff's premises, No. 458½ South Broadway, Yonkers, N. Y., or from carrying signs or placards on which appear the words:

" To the Public of Yonkers:

" Louis Manker's Bakery is not a union shop and it is unfair to organized labor.                    BAKERS' UNION No. 144,"

or in any way referring to the plaintiff or his place of business, or from in any wise picketing in front of the plaintiff's said premises. It appears that during the month of February, 1927, plaintiff had in his employ one Sam Halem, and that while he was so employed he was required to work more than the number of hours per day provided by the rules of the local union, and that as a result the said employee, co-operating with his fellow-members of the bakers' union, went on a strike, and that since that time the defendants have maintained a strike, and have been picketing in front of the plaintiff's premises, and that they have had upon their persons signs similar to those described in the plaintiff's moving papers.

Whatever may be the feeling of the general public with respect to the right of organized labor to strike, and to carry on picketing in conjunction with and in furtherance of the strike, the laws of the State of New York and the rules of the Federal court have recognized such right. (*National Protective Assn. of Steam Fitters & Helpers* v. *Cumming,* 170 N. Y. 315; *Krebs* v. *Rosenstein,* 31 Misc. 661; affd., *sub nom. Kerbs* v. *Rosenstein,* 56 App. Div. 619; *Sinsheimer* v. *United Garment Workers of America,* 77 Hun, 215; *Reynolds* v. *Everett,* 67 id. 294; affd., 144 N. Y. 189; *Johnston Harvester Co.* v. *Meinhardt,* 9 Abb. N. C. 393; *Cohen* v. *United Garment Workers,* 35 Misc. 748; *Rogers* v. *Evarts,* 17 N. Y. Supp. 264; *Wood Mowing & Reaping Mach. Co.* v. *Toohey,* 114 Misc. 185; *Public Baking Co.* v.

*Stern*, 127 id. 229; 216 App. Div. 831; *Mills* v. *United States Printing Co.*, 99 id. 605; *Reed Co.* v. *Whiteman*, 238 N. Y. 545; *Bossert* v. *Dhuy*, 221 id. 342; *Heitkamper* v. *Hoffmann*, 99 Misc. 543, 548; *Albee & Godfrey Co.* v. *Arci*, 201 N. Y. Supp. 172.)  In the case of *National Protective Assn. of Steam Fitters & Helpers* v. *Cumming* (*supra*) Chief Judge Parker said: " Workingmen have the right to organize for the purpose of securing higher wages, shorter hours of labor or improving their relations with their employers.  They have the right to strike; that is, to cease working in a body by prearrangement until a grievance is redressed, provided the object is not to gratify malice or inflict injury upon others, but to secure better terms of employment for themselves.  A peaceable and orderly strike, not to harm others, but to improve their own condition, is not in violation of law."

In the case of *Krebs* v. *Rosenstein* (31 Misc. 661; affd., *sub nom. Kerbs* v. *Rosenstein*, 56 App. Div. 619) the court said: " Our law recognizes the right of men and women to work or not to work, as interests or fancy may incline them, and if any number of employees determine to strike, there is nothing unlawful in their doing so.  If by combination they can obtain shorter hours or higher wages, or in any other way advance their material interests they may do so, and to advance their purpose they are free to strive to win over others to their support by reason, arguments and proper appeal.  'Argument, reasoning and entreaty are lawful weapons.'  *People* v. *Kostka*, 4 N. Y. Crim. 435; *People* v. *Wilzig*, 4 id. 418.  *  *  *  This question of picketing has been discussed in a great many cases, all of which I have most carefully considered, and I cannot find nor have I been referred to any adjudications in this State holding that mere patrolling of a neighborhood by some few persons has been declared unlawful.  In *Rogers* v. *Evarts*, 17 N. Y. Supp. 264, the court, in dismissing the complaint, said: ' The right to combine involves of necessity the right to persuade all colaborers to join in the combination.  This right to persuade colaborers involves the right to persuade new employees to join the combination.' "

In the case of *Wood Mowing & Reaping Mach. Co.* v. *Toohey* (114 Misc. 185) the court held that men could strike for the purpose of reinstating one employee who was improperly discharged, may persuade other workers to join the strike, and even although the employer may suffer irreparable damages the workers should not be barred from picketing.  In that case the court said: "And laboring men not only have the right to strike, that is to quit work, but they have the right to persuade others to strike and to attempt to persuade others not to take their places.  In order to do this the strikers must, of course, be permitted to talk to

their fellow workmen and to the men who are about to take their places, otherwise there could be no persuasion; for how can one man persuade another unless he talks to him? The strikers must not, however, resort to violence or intimidation, for the nonunion man has as much right to work as the union man has to strike. These are axioms. They are principles which have long been imbedded in the law.    *   *   *

" It is the law of this State, so far as the question has been settled, that strikers may employ persuasion and peaceable means to keep nonunion men from taking their places; and the fact that the plaintiff is irreparably damaged, as an incident of the picketing, and that it has no adequate remedy at law, does not deprive the defendants of the right to picket, providing there is no malice and no violence. This rule, which must, I believe, at last everywhere prevail, has just recently been firmly planted in the statutes of the United States. In other words picketing has been legalized by Congress. The right to picket is, therefore, no longer a debatable question in the Federal jurisdiction. The Clayton Act, so called, enacted October 15, 1914 [in section 20 (U. S. Comp. St. § 1243d)], provides that no injunction order ' shall prohibit any person or persons, whether singly or in concert, from   *   *   *   ceasing to perform any work or labor, or from recommending, advising, or persuading others by peaceable means so to do; or from attending at any place where any such person or persons may lawfully be for the purpose   *   *   *   of peaceably persuading any person to work or to abstain from working;   *   *   *   nor shall any of the acts specified in this paragraph be considered or held to be violations of any law of the United States.' Thus we find the right to ' picket ' definitely sanctioned and rooted in the statute laws of the Federal government. This enactment does not, of course, control the courts of the State of New York, in a case of this character, but it does put into Federal statutory form the law of this State as propounded by its ablest jurists. It also sweeps away completely, from consideration here, all that has been previously written by the Federal courts in opposition to picketing, including *Atchison, T. & S. F. Ry. Co.* v. *Gee* [C. C.] 139 Fed. Repr. 582, cited by the plaintiff. And not only that, but it sets forth in bold certain statutory language, the trend of modern thought against injunctions in labor disputes.   *   *   *

" Judge ANDREWS, now on the Court of Appeals, sitting then at Special Term, in a well-considered opinion,   *   *   *   said: ' Mere picketing, therefore, if it is peaceful, if there is no threat or intimidation, if it is confined to simple persuasion, I do not regard in any sense as unlawful, whatever may be the motive of the picketers.'

*Foster* v. *Retail Clerks' Protective Assn.*, 39 Misc. Rep. 48, 57. This is sound. It is just. It is the law. It must forever remain the law until liberty of speech ceases to be a human right."

In the case of *Albee & Godfrey Co.* v. *Arci (supra)* Judge Carswell said: " The defendants have a right to indulge in picketing provided they pursue peaceful methods. The moving papers allege acts of violence, which are denied by the defendants. To entitle the plaintiff to the injunctive relief it asks there should be satisfying proof of the alleged acts of violence. This should be in the form of evidence of the prosecuting of the individuals who are claimed to have indulged in violence. * * * The methods of proof indicated, of course, are not exclusive, but substitute methods should carry with them the same degree of persuasiveness that inhere in the indicated methods. The plaintiff's moving papers do not meet this standard * * *."

These decisions, however, do not justify members of a labor organization, who are on strike, in indulging in acts of violence in violation of the Penal Law of the State of New York.

The moving papers indicate that the plaintiff's place of business is situated upon one of the important business streets of the city of Yonkers, and but a short distance from the police headquarters and the City Court of the city of Yonkers, a court of competent criminal jurisdiction. If the defendants have or during the pendency of this action should indulge in acts which constitute a violation of the Penal Law, it is fair to assume that such an act has or will be committed almost in the immediate presence of a police officer, whose obvious duty it would be to cause an arrest and a criminal prosecution of such an offender.

If such a course were resorted to, the defendant would be afforded an opportunity of meeting his accuser and bringing the witnesses before the court, who, after seeing them, could readily determine their credibility, and then definitely determine whether or not the law had been violated. It would seem that this was the procedure that the founders of our government intended, and it is the one more likely to result in a just decision than the more popular modern remedy of a temporary injunction, where the court is called upon to determine controverted questions on affidavits without the advantage of seeing the witnesses who make them.

The plaintiff's motion for a temporary injunction, pending the trial of the action, is, therefore, denied.