### ENJOINING STRIKERS.

[Superior Court of Cincinnati, General Term.]

THE IRON MOLDERS' UNION OF NORTH AMERICA ET AL v. THE
I. & E. GREENWALD COMPANY.

Decided, April 28, 1906.

*Contempt—Power of Court to Punish Strikers Guilty of—Jurisdiction*
*Complete—Conduct Against which Injunctions will Lie—Peaceable*
*Enticement Away of Employes not Unlawful—Use of Money not*
*Unlawful, When—Motive of Strikers—Degree of Proof Necessary*
*to Convict—Sections 5640 and 5649—What Constitutes Unlawful*
*Persuasion.*

1. A court of record has complete jurisdiction, and inherent power to
   punish for contempt, in the case of an employer who complains of
   interference with his business and irreparable injury thereto by
   . strikers and members of a labor union; the question on review
   of proceedings in this case is, whether the evidence sustains the
   judgment which was rendered.
2. Where the record shows that the acts of which the defendant strik-
   ers and their leaders have been found guilty consisted in peacefully
   enticing employes to leave their employment when not under con-
   tract to remain, and in giving them railroad tickets and money for
   traveling expenses to go to another city with their families, a
   finding that such conduct was unlawful persuasion and in con-
   tempt of a previous order of court which enjoined against unlaw-
   ful persuasion, will be reversed on the ground that the defendants
   were acting within their rights.
3. In considering the conduct of the persons charged with unlawful
   persuasion the motives with which the person acted are imma-
   terial, if it appears that such person was in the exercise of a clear
   legal right or in the performance of a duty.

FERRIS, J.; HOFFHEIMER, J., and LITTLEFORD, J., concur in
separate opinions.

The I. & E. Greenwald Company instituted a suit against
the Iron Molders' Union of North America and other defendants
charging the commission of unlawful acts and acts about to be

committed that would work irreparable injury to them, and sought injunctive relief, which the court granted in special term, whereby the defendants (below) were enjoined, among other things, from all interference with the business of the Greenwald Company; from compelling or inducing, or attempting to compel or induce, by threats, intimidation, force, violence or unlawful persuasion, any person or persons whomsoever from in any way obstructing the operation of the business of the I. & E. Greenwald Company.

The preliminary restraining order was issued on September 30, 1904, and a copy of the same was served upon the defendants. From this order no petition in error was filed and no attempt was made to have the order of injunction modified or reviewed.

This was the condition of matters until the 14th day of August, 1905, when written charges in contempt were filed against two of the defendants—Henry Hinnenkamp, described in the original proceeding as being a "business agent," and John R. O'Leary, described as the third vice-president of the Iron Molders' Union of North America. The specifications recited that they had disobeyed, resisted and violated the temporary injunction in this, to-wit:

"That the said men above named on or about the 17th day of July, 1905, accosted John East and Frank Reid, and by giving said parties membership tickets to the union and paying them a sum of money—one giving railroad fares to said parties and their wives to Cleveland, Ohio—succeeded in inducing the said John East and Frank Reid to break their contracts with plaintiff and leave plaintiff's employ.

"That the said parties have also been interfering with other employes of plaintiff to induce them to leave plaintiff's employ."

Upon these charges a hearing was regularly had before the trial judge in the original proceeding, and on August 28, 1905, upon completion of the testimony, the defendants were found guilty of contempt in having violated the injunction of September 30, 1904. A motion for a new trial was filed, an entry made overruling the same, and on August 30, 1905, a transcript

of the docket and journal entries and original papers, and bill of exceptions with transcript of additional docket and journal entries were filed in this court.

It will thus be seen that the sole issue made by these proceedings in error relates to the proceedings and judgment in contempt, which the petition in error seeks to have here reversed.

It is conceded as an elementary proposition that the plaintiffs in error can not in this proceeding question the validity of the injunction. All courts have the inherent power to punish contempts—such power being essential to the very existence of courts.

"This inherent and necessary power can be exercised by a superior court independently of constituted authority, and such courts may go beyond the power given by statute in order to preserve and enforce the constitutional powers when acts of contempt invade it." Rappalge on Contempts, page 2.

The authorities are clear in limiting the scope of the authority of an appellate court in contempt proceedings. The validity of an injunction, it would be admitted, could be attacked when it appeared that the court making the order had no jurisdiction over the parties or the subject-matter. Such judgments and orders thus made are regarded as nullities. They are not voidable, they are simple void; but in such cases courts are not called upon to say whether the court decided right or not in granting the injunction. High on Injunctions, Section 416; Beach on Injunctions, Section 247.

The case presented by the petition in error shows complete jurisdiction in special term, both over the persons and the subject-matter. Section 5581 of the Revised Statutes of Ohio provides that:

"An injunction or restraining order granted by a judge may be enforced as the act of the court, and disobedience thereof may be punished by the court or any judge who might have granted it in vacation, as a contempt."

In the absence of such statutory authority a review might be limited to the consideration of questions of jurisdiction, but

under this statute no ground can be found for questioning the jurisdiction of the court in making the order complained of, and there remains, therefore, but a single question for consideration, to-wit: Were the men charged with contempt guilty of a violation of the order of injunction as issued?

A contempt proceeding is a special proceeding. The Legislature in considering "contempts of court" defined in Sections 5639, Revised Statutes of Ohio, the acts that would receive summary punishment, and in the following section (5640) defined what acts were contempts of court, and outlined the methods of procedure in such matters, and concluding with Section 5649, where the following language was employed:

"The judgments and orders of the court or officer, made in cases of contempt, may be reviewed on error."

Proceedings under this act have been the subject of judicial review on frequent occasions by our Supreme Court Syllabus 3 in *Myers* v. *State*, 46 O. S., provides that: "A proceeding to punish for contempt under 5639 * * * may be reviewed on error," and at page 491, the broad language is used that: "The judgments of all inferior courts are subject to review."

In *Brimson* v. *State*, 63 O. S., 347, the syllabus reads that—

"A judgment of the circuit court * * * in a contempt proceeding may, by virtue of Section 5649 of the Revised Statutes of Ohio, be reviewed in this court."

In that case the plaintiff in error had been adjudged guilty of contempt, by the court, and ordered to pay costs and a fine. Error was prosecuted from the judgment, and a motion made to dismiss the case on the ground that the court had no jurisdiction, to which the court replied, on page 348:

"We consider the point not well taken. Contempt is *quasi* criminal in its nature. The actions embraced * * * are of a civil nature and hence do not include proceedings in contempt and as Section 5649 provides *without qualification* the judgment and orders of a court or officers made in cases of contempt may be reviewed on error, and as there appears no reason to limit such review to any particular court, it would follow that sentence in contempt imposed by the court of com-

mon pleas and affirmed by the circuit court may be reviewed by this court.''

The case of *Hale* v. *State*, 55 O. S., page 217, furnishes authority that contempt of court finds the inherent power of punishment in the court itself. That case holds that the ''General Assembly is without authority to abridge such power,'' the facts in that case while not furnishing a parallel to the case at bar are interesting and extremely instructive in furnishing authority for the right of review in contempt proceedings. The present chief justice of the Supreme Court said:

''In the case before us a court created by the Constitution punished summarily as for a contempt one guilty of a wrongful act which interfered with the exercise of its jurisdiction. Upon a careful examination of the reported cases we find but one which seems to deny its power to do so. We are not concerned with cases which hold that the power may be exercised by courts or legislative bodies only when . they are proceeding within ·the sphere of duty when the alleged contempt is committed. However clear it may seem from a consideration of the principles involved, that the authority conferred by the Constitution upon the Legislature to create additional courts has reference only to courts with all· the attributes and inherent powers that are requisite to the efficient performance of judicial duties, we are not now concerned with any reported case which holds that the Legislature may create a judicial tribunal without power to enforce respect for its sessions, its writs or its process.
''We are mindful that in reviewing the judgment of the circuit court in this case we are exercising jurisdiction conferred by the statute, as was the circuit court when it reviewed the judgment of the court of common pleas. This we do without doubt as to the validity of the statute which authorizes the review. It does not in any manner or to any degree limit the power of the judicial department of the government of the state. Its object is to diminish as much as may be the liability of the power to abuse, but without assuming a revisory authority in another department.''

The language of the statute (construed to justify a review of the facts upon which the court predicates its order) makes it necessary to examine the evidence to determine whether the

same sustains the judgment rendered in special term. The injunction order commanded the defendants, their confederates, servants and agents, and any and all other persons aiding and abetting them, to desist and refrain from—

1.   Hindering, obstructing or stopping any of the business of the plaintiff in this city, county or elsewhere.

2.   In any manner interfering with the plaintiff company in carrying on its business in the ordinary and usual way.

3.   Going either singly or collectively to the homes of the employes of the plaintiff company, or any or either of them, for the purpose of and in such a manner as to intimidate, coerce or unlawfully persuade any of said employes to leave the employment of the plaintiff company.

4.   Compelling or inducing by threats, intimidation, force, violence or unlawful persuasion, from freely continuing in the service or employment of the defendant company.

The record containing the testimony upon which conviction was had fails to disclose any act of violence, but the court's finding recites that: "The defendants named have violated each and every one of the hereinbefore quoted prohibitions of the injunction order." And it further finds that the defendants below had "seduced away plaintiff's employes for the purpose of aiding the strike and thus directly hindered and obstructed, and unlawfully interfered with plaintiff's business." And the court further found from the testimony that one of the defendants had violated the injunction by his own admission of having paid money and procured railroad tickets as an inducement to the men for quitting the employment of the Greenwald Company. The evidence bearing upon what the defendants did in their attempts to induce employes of the plaintiff to quit its service, either by violence, threats, intimidation or persuasion, was introduced under charges 3, 4, 8, 9, 11, 12, 15 and 16, and the testimony does establish the fact that East and Reid were molders in the employ of the Greenwald Company up to July of 1905, and while so employed as day laborers they were approached by two of the defendants in error who endeavored by various inducements to have them unite with the union and

thus cease working for the Greenwald Company. In what was done in this connection the record fails to disclose any evidence of fraud or a breach of contract, and does indicate a disposition on the part of the representatives of the union to have these men unite with them in a movement that was beneficial to the men and the union, while depriving the Greenwald Company of their services, though not in violation of the terms of any contract.

It will be admitted that there is authority denying the right of Hinnenkamp and O'Leary to induce men to a line of action that necessitates loss to the employer by reason of deprivation of services of the employe. Many of these cases are made to depend upon the question of motive, and in this state the law is established by frequent decisions of our Supreme Court that the motive with which an act is done is immaterial, and that to make an act unlawful, the act itself must be an infringement on the legal rights of the Greenwald Company.

In 12 O. S., 249, it was held that:

"The act, to-wit, the use of his own property, being lawful in itself, the motive with which the act is done is in law a matter of indifference."

In 54 O. S., at page 82, the Supreme Court said that:

"Courts can not regulate or control the moral conduct of a man unless authorized so to do by statute."

And in 57 O. S., at page 327, the doctrine was again announced that:

"When a person has a legal right to do a certain act, the motive with which it is done is immaterial."

So, in 70 O. S., at 164, the court again said:

"It is immaterial by what motive one is prompted in the exercise of a clear legal right or the performance of a duty."

And this court speaking in general term, in 2 Disney 153, said:

"An act done maliciously or fraudulently will not furnish a ground of action if it is not itself unlawful; there must be legal damage resulting."

And many courts have united in holding that in the absence of contract between the company and employes, that inducing men to quit the service was not actionable, even though done with intent to injure. 13 Lea, 507; 35 At. Rep., 53; 68 Vt., 219.

In 47 N. J. Eq. Rep., at page 519, syllabus 4, it was held that injunctive relief would not lie to require admission of certain persons into an association, or to enjoin them from attempting to coerce or intimidate certain persons from employing stone cutters. The court held, syllabus 4, that:

"This court will not interfere by injunction to restrain acts of the association on the ground that they may be detrimental to trade or injurious to individual business, when it appears that the acts done or threatened are declared by statute as not unlawful."

The court's order enjoined against the doing of the unlawful, not the lawful, and we are concerned, therefore, with the consideration of what the defendants could lawfully do. The evidence is clear and very convincing on the part of the persons charged with contempt that their motive was the securing of better conditions for the members of their organization. That is not unlawful. This they had the right to do, and while the law does not consider motives, it was entirely proper for them to show by competent testimony what their purpose was. And the law has defined the extent to which the acts may go regardless of motive. The men approached to join the union were not under contract for a definite term, and, therefore, it was entirely in the right and not in violation of any law for Hinnen-kamp and O'Leary to use peaceable persuasion and argument to induce them to unite with the union, although the effect of the same would be manifestly to deprive Greenwald & Company of their services. Such cases are not rare. When men have been induced to leave employment at the expiration of the time for which they were hired, such acts are not within the prohibi-

tions of the law. Wood on Master and Servant, Section 236, p. 457; 75 Me., 225.

The Iron Molders' Union is not an unlawful combination. It is a legal union. Its representatives had a right to engage in conversation men who were in the service of the Greenwald Company in an endeavor to induce them to leave their employment at the expiration of their contract for services. They had a right, in a peaceable, orderly manner, to present such arguments and reasons to East and Reid as would induce them to unite in an effort to better their conditions, to make more tolerable rules, to secure a greater wage and a shorter hour, and having done this without violence or coercion or threats or intimidation, they were not guilty of violation of that part of the court's order enjoining against unlawful persuasion. These things, under the decisions, they have the right to do. It is lawful persuasion. The authorities on this subject are collated by High on Injunction, Section 1415i. At page 1420 the author says:

"Moreover, striking employes or their sympathizers have the undoubted right, so long as they persuade in a peaceful and orderly manner, to resort to all manner of peaceful persuasion for the purpose of inducing plaintiff's employes to leave his service or those who wish to enter his employ from so doing. Accordingly, in the absence of threats, intimidation, violence or other unlawful coercive measures an injunction will not restrain such conduct upon the part of defendants." *Arthur* v. *Oaks*, 11 C. C. A., 209; 63 Fed. Rep., 310; 25 L. R. A., 414; 23 Fed., 748.

In this last case Justice Brewer makes the proper distinction as to where persuasion ceases and coercion begins. In syllabus 1, at page 750, he says:

"Where employes of a railroad company in the hands of a receiver appointed by the court are dissatisfied with the wages paid by the receiver, they may abandon the employment and by persuasion or argument induce other employes to do the same. The real question is, whether these parties went there simply as persons have a right to do to request engineers and trainmen to desist from further labor, or whether they went there under the circumstances with such a demonstration of force, such an

attitude and air that although nothing but a request was expressed, it was a request which the men did not dare decline to comply with."

This superior court held, in — W. L. B., 32, that it was "lawful for workmen to endeavor by reasonable argument and persuasion to induce others who have not hitherto acted with them, to do so."

The court below found that what the union did amounted to a hindrance and an obstruction and was an unlawful interference with the plaintiff's business, and, therefore, held that "persuasion with such object in view was clearly unlawful and was in violation of the court's order." But such definition leaves no room for the application of the doctrine that a "court of chancery will not enjoin the enticement away of employes even where the admitted purpose of the enticers is by a preconcerted plan to injure the employer in his business *provided the enticement is effected by mere persuasion or argument.*"

Courts of equity recognize this distinction. The most frequently quoted work on combinations is Eddy. At page 1173, Volume 2, Section 1031, the rule is stated as follows:

"Where there is no sufficient evidence of violence, force, intimidation or coercion, and the facts simply show that the parties complained of are persuading workmen still employed to quit their employment, and others about to accept employment not to do so, and that the persuasion consisted of arguments, personal appeals and inducements by way of payment of traveling expenses to other localities, an injunction will not be granted."

The same doctrine finds a clear expression in the case of *The Otis Steel Co.* v. *Local Union No.* 218, 110 Fed. Rep., 700, where it is said:

"There is an undoubted right in the members of such organizations to promulgate their theories by reason, logic, argument, and the persuasive influence of those peaceful weapons to the end that other men may be brought to think as they do. When that persuasion has been accomplished the men persuaded may evidence such fact by joining the organization whose principles and theories they come to believe." 34 Am. St. Rep., 678.

In *Murdock* v. *Walker*, 152 Pa. St., 595, it was held:

"That the right of workingmen to organize into associations can not be questioned, and the right of the members of such associations, either as members or as an organization, to cease work for an employer and to use all lawful and peaceable means to induce others to refuse to work for such an employer, are equally well founded."

And in 118 Michigan, at 421, the court says:

"Laborers may use persuasion to induce men to join their organization, or to refuse to work except for an established wage. They may present their case to the public in newspapers or circulars in a peaceable way and with no attempt at coercion."

A case frequently referred to in the authorities defining persuasion and the right to lawfully persuade men is found in 131 Mo., page 212, where the court by its injunction had prevented certain strikers from attempting to coerce employes to leave their work and join the strike, said:

"The injunction in this case does not hinder the defendants doing anything that they claim they have the right to do. They are free men and have the right to quit the employ of the plaintiffs whenever they see fit to do so, and no one can prevent them. They have a right to use fair persuasion to induce others to join them in their quitting; but when fair persuasion is exhausted, they have no right to resort to force or threats or violence."

Judge Grinnin, reviewing the authorities on this subject, says, in the case recently decided of *Waddey* v. *Typographical Union:*

"I do not find that courts of equity enjoin peaceful enticements, even when accomplished by money reward. * * * My conclusion on this branch of the case is that so long as the defendants attempt to induce the new employes to leave their employers by fair and peaceable persuasion only, they are guilty of no act which a court of equity will enjoin."

Admitting, therefore, all that is claimed by counsel in this behalf, that the men found guilty of unlawful persuasion had

made attempts to induce employes to leave the employment at the end of their contract; granting that the testimony shows that sums of money were paid in cash to the employes of the Greenwald Company, who were furnished with railroad tickets that they might leave the city and the employment of the Greenwald Company; admitting that certain offers were made to them for the express purpose of inducing them to join the union and consequently leave the employment of the defendant in error, we find under the authorities nothing unlawful in such conduct. The payment of money furnishes no authority for their conviction. It is not unlawful, because they had the right to do it under the circumstances as shown by the evidence. A leading text-writer on the subject of injunction says:

"For the same reason equity will not enjoin strikers from offering to pay money to such of plaintiff's employes as are persuaded to leave his services, nor will the relief be granted to restrain the posting or publishing the names of persons who refuse to subscribe to funds raised for the purpose of benefitting strikers or for the purpose of carrying on strikes." High on Injunctions, Section 1415; 17 N. Y. Supp., 264; 9 Abbott, 363; 123 Fed Rep., 656; 18 Am & Eng. Enc. L., 87.

The plaintiffs in error were convicted below upon such facts because the court construed their conduct to be unlawful persuasion and because "such being the law, it is plain that the defendants named have violated each and every one of the hereinbefore quoted prohibitions of the injunctive order."

We do not so apprehend the law, and being of the opinion that the expression "unlawful persuasion" has received the legal interpretation herein claimed, wherein obligations resting upon the defendants below were fixed and defined by the law; and being of opinion that the record fails to disclose a violation of any duty or obligation against which they were legally enjoined; and further finding from the testimony that no contract was violated, and that the arguments and persuasive efforts made, unaccompanied by force, threats or violence, were not illegal, we, therefore, hold there was no violation of the court's order.

For these reasons we believe that the defendants have not been shown to have violated the injunction of September 30, 1904.


HOFFHEIMER, J.

The contention of defendant in error, that the judgment in contempt is not reviewable in this court, for the reason that such proceeding is in effect a collateral attack on the decree of injunction, is not in my judgment tenable. The question before us is not as to the correctness or regularity of the decree originally granted. That decree was not made the predicate of error. The sole question before us is: "Was the judgment of the court in the contempt proceedings, which proceedings were instituted under Section 5640, Revised Statutes of Ohio, erroneous, in finding Hinnenkamp and O'Leary guilty of a violation of the decree? The review of contempt proceedings in this state is governed by statute. The order of the court below was a final order (Section 6707, Revised Statutes), and as such is reviewable by virtue of Section 5649, Revised Statutes. The cause, therefore, stands for review like any other proceeding in error properly before this court.

Plaintiffs in error were charged in writing with having violated the decree issued by the court below. The charge, therefore, became the basis for proceedings of a *quasi* criminal nature, and before the men could legally be adjudged guilty of a violation of the decree the *quantum* of evidence must be such as the law demands in actions of such character. As the proceeding is one involving personal liberty, strict construction is required (62 O. S., 296), and, therefore, if these men are to be punished at all, it must be because they have been duly proven to have been guilty of some act with which they have been charged and which act the court in its decree had enjoined.

In considering the question at issue I am not unmindful that a flagrant and wanton disregard of an injunction issued by a

court with proper jurisdiction of the parties and the subject-matter is a matter, that according to fundamental principles, is inherently within the power of the court to punish. This must be so, *ex necessitate,* in order to maintain the power, efficiency and integrity of the courts. But the personal liberty of the subject is also of prime importance and it can not be restrained, unless it appears beyond doubt in a proper proceeding that an injunction granted in due course had been actually violated and disregarded by the individual.

During the presentation of this cause it was practically conceded that if Hinnenkamp and O'Leary had violated any section of the decree, it was paragraph 4. Said paragraph is as follows:

"Also from compelling or inducing or attempting to compel or induce by threats, intimidation, ~~persuasion~~, force, violence or unlawful persuasion, any of the employes of the I. & E. Greenwald Company to leave its service."

The scope of the injunction, therefore, is directed against unlawful persuasion, and it is a violation of this injunction with which the men stood charged. In considering the evidence, therefore, the significance or treatment of the term "unlawful persuasion" is at once involved. Does the evidence show that Hinnenkamp and O'Leary violated the terms of the injunction and were guilty of unlawful persuasion? Was the evidence sufficient to warrant conviction?

The term *unlawful persuasion* has a technical legal significance. What constitutes unlawful persuasion in some jurisdictions is not unlawful in others. For example, we find frequently cited in the decisions the case of *Taff-Vale Railway Co. et al* v. *Amalgamated Societies of Railway Servants et al* (1901), Appeal Cases H. L., 426, as an exposition of the English idea. Indeed, we are cited to it in this case as an expression of the highest English court upon the subject. In that case the injunction restrained the defendant labor union, its servants, agents and others acting by its authority from watching or causing to be watched or beset the Great Western Railway station at Cardiff,

or the works of the plaintiff, or any of them, or the approaches thereto, or the place of residence or any place where they might happen to be, of any workman employed or proposing to work, for plaintiff, for the purpose of *persuading* or otherwise preventing the person from working for the plaintiff or for any other purpose except merely to obtain or communicate information, and from procuring any person who had or might enter into any contracts with the plaintiff to commit a breach of such contracts. This injunction, it appears, was sustained by the House of Lords, without dissent.

Thus it is seen that this celebrated case enjoins persuasion even by peaceful means. Nor does this case stand alone. But the principle of this case is not generally accepted by the American courts. In 6 Pomeroy's Equity Jurisprudence, Par. 595 (edition just published, 1906), I find the following:

"The American courts generally agree that interference with the employe's right to continue in employment or in the employer's right to have such continued employment not under contract, where such interference is by direct coercion or intimidation of the employe, is ground for injunction. But when the interference with these rights is by persuasion and peaceful means, it is not generally in the American courts considered unlawful and an injunction will not be given."

See *Fletcher* v. *Association of Machinists* (N. J. Ch.), 55 Atl., 1077; *Foster* v. *Retail Clerks Association*, 39 Misc. Rep., 48; *Bohn Mfg. Co.* v. *Hollis*, 54 Minn., 223; 40 American State Reports, 319; 55 N. W., 1119; 21 L. R. A., 337; *Rodgers* v. *Evarts*, 17 N. Y. Supp., 264; *Reynolds* v. *Everett*, 144 N. Y., 89.

The authority cited points out that in England the injunction extends to interference by persuasion (citing *Taff-Vale Railway Co.* v. *Amalgamated Societies of Railway Servants, supra*), and adds:

"*But this extension rests upon an act of parliament.*" (Act of 1876.)

In examining the status of labor unions in our own state we find that the policy of our law favors them. Section 4364-68, Revised Statutes of Ohio, is as follows:

"It shall be unlawful for any individual or member of any firm, or agent, officer or employe of any company or corporation to prevent employes from forming or joining and belonging to any lawful labor organization, and any such individual, member, agent, officer or employe that coerces or attempts to coerce employes by discharging or threatening to discharge from their employ or the employ of any firm, company or corporation because of their connection with such lawful organization shall be guilty of a misdemeanor and upon conviction thereof in any court of competent jurisdiction shall be fined in a sum not exceeding one hundred dollars or imprisonment for not more than six months or both in discretion of the court."

By necessary implication the labor union has the right to invite members to join the unions. This being so, if the persuasion is peaceful (that which the law countenances) what difference does it make what the motives of those who engage in such persuasion may be?

Defendant in error earnestly contends that *any persuasion which has for its immediate and direct purpose and effect an injury to the complainant in his business or occupation by causing persons to leave his employ is unlawful persuasion.* Can this be true? Can the motive with which a person acts in the clear exercise of a legal right became material in working out the true solution of the difficult and vexatious problem before this court? It seems to be established beyond cavil that it is immaterial by what motive one is prompted in the exercise of a clear legal right or in the performance of a duty. Such was the language of Shauck, now chief justice of Ohio, in *Lancaster* v. *Hamberger,* 70 O. S., 156, 164. See also *Frazier* v. *Brown,* 12 O. S., 294; *Letts* v. *Kessler,* 54 O. S., 73 (spite fence case); *Kelly* v. *Ohio Oil Co.,* 57 O. S., 327.

As was said in *Bohn Mfg. Co.* v. *Hollis, supra,* the exercise by one man of a legal right can not be a legal wrong to another, or as was said in another case: "Malicious motives make a bad case worse, but they can not make that wrong which in its own essence is lawful." *Heywood* v. *Tillson,* 75 N. E., 225; *Phelps* v. *Nowlen,* 72 N. Y., 39; *Jenkins* v. *Fowler,* 23 Pa. St., 308.

It can make no difference what the evidence may show the motives of Hinnenkamp and O'Leary to have been in persuading East and Reed to join the union and leave the service of the Greenwald Company. The question of motive is immaterial and can not be considered. The testimony substantially shows that the two employes, East and Reed, were induced by Hinnenkamp and O'Leary by means of argument and inducements (railroad tickets and expenses) to join the union and thus leave the service of the I. & E. Greenwald Company. The men were not under *contract* with the I. & E. Greenwald Company. Mr. Greenwald himself testifies that the men were not under any particular agreement (Record, p. 4), and that they received wages of three dollars a day. There was no force, no violence, no intimidation in what plaintiffs in error did. There were no threats unless it can be said there was what is termed a *veiled threat* in the use of the phrase "straightened up," as it appears to have been several times used by these men. For example, see testimony of East (Record, p. 12):

"Q. Just detail to the court how, when and what was said and done? A. Mr. O'Leary called and bid us the time of day and in the conversation he asked me if I wanted to be straightened up, and I replied to him that I hadn't thought of it very seriously, and there was very little if anything said that night in regard to it any more than he asked me if I would care to have him meet me and give him the number of my room.

"Q. And when next did you hear from any member of the union? A. The next evening I met Mr. Hinnenkamp.

"Q. Where was this that you met Mr. Hinnenkamp? A. At my own house.

"Q. And what was said? A. I did not know the gentleman until he introduced himself and of course I knew who he was then because Mr. O'Leary had told me that he might call himself and I had heard of Mr. Hinnenkamp, and when I found out who he was I asked him in. We sat down and talked for a few minutes and he asked me what offer he could make for to straighten me up to take a union card and leave town.

"Q. What did you say to that? A. I told him if he cared to make an offer I would consider it. So he made me a proposition, which I accepted."

Considering the testimony as to the arguments used to persuade these men to join the union and leave the service of Greenwald, bearing in mind the men had no contract with Greenwald, that inducements (railway tickets and expenses) were given, and language such as the kind pointed out was used, can we say that the men resorted to what the law recognizes as unlawful persuasion?

The offering and giving, what some courts term, "bribes," of the character of those given in the case at bar, is not of itself unlawful. The so-called "bribes" were nothing more nor less than inducements by way of expenses. This was determined in several cases, and in *Waddy* v. *Richmond Typographical Union No. 90* (1905, Va), several of the decisions so holding are set forth. This case I am informed, has been but recently affirmed by the appellate court (Caldwell, J.)

See, also, *Rogers* v. *Evarts, supra,* Syl. 4; Eddy on Combinations, Section 1031; *U. S.* v. *Kane*, 23 Fed. Rep., 748.

In *Otis Steel Co.* v. *Local Union No. 218* (110 Fed. Rep., 700), Wing, J., speaking with reference to persuasion said:

"There are at the foundation of all labor organizations, as there are at the foundation of religious organizations and of the innumerable other forms of social organizations, certain ideas peculiar to each and there is an undoubted right in the members of such organizations to promulgate their theories by reasonable legitimate argument and the persuasive influence of those peaceful weapons to the end that other men may be brought to think as they do."

In *Beck* v. *Teamsters Protective Union,* 118 Mich., 497, 517, Grant, C. J., said:

"So also the laborers have the right to fix a price upon their labor and refuse to work unless that price is obtained. Singly or in combination they have this right. They may organize in order to improve their condition and secure better wages. They may use persuasion to induce men to join their organization or refuse to work except for an established wage. They may present their cause to the public in newspapers or in a peaceable way and with no attempt at coercion. If the effect of such

case is ruin to the employer, it is *damnum absque injuria* if they have only exercised their legal rights. The law does not permit either party to use force, violence, threats of force or violence, intimidation or coercion. The right to trade and the personal liberty of the employer alone are not involved in this case; the right of the laborer to sell his labor when and to whom and for what price he chooses is involved.''

In *Hamilton-Brown Shoe Co.* v. *Saxey*, 131 Mo., 212, the court said—

''They have the right to use fair persuasion to induce others to join them in their quitting, but when fair persuasion is exhausted they have no right to resort to force or threats of violence. The law will protect their freedom and their rights, but it will not permit them to destroy the freedom and rights of others.

''The same law which guarantees the defendants in their right to quit the employment of the plaintiffs at their own will and pleasure, also guarantees the other employes the right to remain at their will and pleasure. These defendants are their own masters but they are not the masters of the other employes, and not only are they not masters of the other employes but they are not their guardians.''

In *Gray* v. *Building Trades Council*, 63 L. R. A., 733, the court said:

''It must appear that the means used are threatening and intended to overcome the will of others, to compel them to do or refrain from doing that which they would or would not otherwise have done. What amounts to coercion, intimidation or threats of injury must necessarily depend upon the facts of each particular case.''

See, also, *Union Pac. R. Co.* v. *Reuff*, 120 Fed. Rep., 102.

Were, then, the ''weapons of persuasion'' used in the *particular case under consideration*, under all the circumstances peaceful? What was the effect of the arguments or threats used upon these men? How did they affect them? What were the circumstances? It does not appear that the men, East and Reed, were at any time in fear. It can not be said that they

were coerced in the ordinary meaning of that term or that they acted because of fear or coercion. Their judgment, will and freedom of action does not appear to have been subverted or overcome by threats, veiled or otherwise. They were entirely free to choose and to act. They were free to remain with Greenwald, had they elected to do so, or they were free to leave. Nor can it be said from the evidence that they did not exercise their *own* will and their *own* judgment in the final decision. Under *the circumstances of this particular case* the persuasion used was lawful. The evidence, therefore, did not warrant conviction, and the finding of the court below was, therefore, erroneous. For these reasons and those more fully set forth in the opinion of Ferris, J., I concur in the order of reversal.

———

1. To induce a man, by argument and by giving him money, to quit his work when he can do so without breaking a contract, there being no compulsion of any sort, no false charges against his employer, and no ill-feeling against his employer, is not *unlawful* persuasion.
2. Proceedings in contempt are *quasi* criminal. The charge against the defendant is strictly construed in his favor. It is error to find a defendant guilty of anything with which he is not charged in the written charges against him.

LITTLEFORD, J.,

On September 30, 1904, the superior court, sitting in special term, enjoined the Iron Molders' Union of North America and others from doing certain acts having the effect of hindering the business of the I. & E. Greenwald Company of Cincinnati. The injunction fully sets forth all of these acts.

No motion to modify this injunction was made, nor was any petition in error filed, so that the injunction in all its terms is in force to this day.

On August 14, 1905, a written charge of contempt was filed against J. F. O'Leary, vice-president of the Iron Molders Union of North America, and Henry Hinnekamp, business agent of

the Iron Molders Union No. 4, alleging that these two men violated the injunction because—

"That the said men above named on or about the 17th day of July, 1905, accosted John East and Frank Reed, and by giving said parties membership tickets to the union and paying the railroad fares of said parties and their wives to Cleveland, Ohio, succeeded in inducing said John East and Frank Reed to break their contracts with plaintiff and to leave plaintiff's employ.

"That the said parties have also been interfering with other employes of plaintiff and inducing them to leave plaintiff's employ."

There was no evidence to support the latter charge, and it, therefore, does not cut any figure here.

After a hearing, the court found that "it is plain that the defendants named have violated each and every one of the hereinbefore quoted prohibitions of the injunction order." The prohibitions referred to are given near the beginning of the opinion and are as follows:

"1. Hindering, obstructing or stopping any of the business of plaintiff in this city, county or elsewhere.

"2. In any manner interfering with the plaintiff company in carrying on its business in the usual and ordinary way.

"3. Going either singly or collectively to the homes of the employes of the plaintiff company, or any or either of them, for the purpose of, and in such manner as to intimidate, coerce or unlawfully persuade any of said employes to leave the employment of the plaintiff company:

"4. Compelling or inducing by threats, intimidation, force, violence or unlawful persuasion, from freely continuing in the service or employment of the plaintiff company."

It will be seen that the defendants are not accused in the written charge of doing any of those things spoken of in paragraphs 1, 2 and 3. It is doubtful if the written charge accuses them of doing what is forbidden in paragraph 4. To find the defendants guilty of anything with which they are not charged in the written charge against them is alone sufficient to reverse the judgment of the court below.

After overruling the motion for a new trial, the court fined O'Leary and Hinnenkamp one hundred dollars each. This judgment of the court now comes before the general term on error.

It is conceded on all sides that the soundness of the injunction granted by the court below can not be questioned in this proceeding; but the injunction of a court in a prosecution for contempt on written charges filed under Section 5640, Revised Statutes, may be reviewed on error. Section 5649, Revised Statutes, so provides.

The only part of the injunction which forbids the defendants from compelling or inducing the employes of the Greenwald Company to leave its services is as follows:

"Also from compelling or inducing or attempting to compel or induce by threats, intimidation, force, violence or unlawful persuasion any of the employes of the I. & E. Greenwald Company to leave its service."

Proceedings in contempt are *quasi* criminal; the charge against the defendant is strictly construed in his favor. In this case these defendants can be found guilty only provided they induced East and Reed to leave Greenwald Company's services by *unlawful* persuasion. If they gained this end by lawful persuasion, they are not guilty. A court can not punish as a contempt an act which it has not forbidden. It should be said that there is no claim that threats, intimidation, force or violence were used.

Moreover, before a court can find a defendant guilty of contempt, the charge must be proved beyond a reasonable doubt— that is, the court must "feel an abiding conviction to a moral certainty of the truth of the charge." *Morgan v. State*, 48 O. S., 371.

The evidence in this case shows that O'Leary and Hinnenkamp induced East and Reed, two of the Greenwald Company's men, to quit the company's service by argument, and by giving them tickets to the union, railroad tickets to Cleveland, and money for traveling expenses.

The question before this court is whether or not this was *unlawful* persuasion.

It is not proved in this case that East and Reed broke any contract with the Greenwald Company. In fact, the evidence discloses that they had the right to quit work when they chose. Nor is it proved that the respondents made any false statements about the Greenwald Company to East and Reed to induce them to leave the company's employ. And, finally, it is not proved that O'Leary and Hinnenkamp were actuated by any ill-will or malice toward the Greenwald Company in what they did. On the contrary, the evidence shows they were moved only by a wish to promote the welfare of the union.

Whether or not a different conclusion from that reached here would be justified had it been proven that the respondents induced East and Reed to break a contract with the Greenwald Company by false charges against the company made with a feeling of malice against it, it is not worth while to discuss. The fact that these things were not proved excludes from consideration many of the cases bearing upon the subject in hand. The plain question then is whether or not it is *unlawful* persuasion to induce a man, by arguments and by giving him money, to quit his work when he has a right to quit, there being no compulsion of any sort, no false charges against his employer, and no ill-will against his employer.

"To persuade is to bring the will of another to a desired decision by some influence exerted upon it short of compulsion." Standard Dictionary.

According to this definition, even giving of money to East and Reed does not make the conduct of O'Leary and Hinnenkamp anything more than persuasion. It was just the same as if they had used arguments alone to get East and Reed to leave the Greenwald Company. The dictionary makes this clear, and the view is sustained by authority also.

"The offer by defendants of money to pay expenses of the employe is lawful. The assistance given to those needing it is

lawful, even if offered as an inducement to the employe to leave.'' *Rogers et al* v. *Evarts et al,* 17 N. Y. S., 264, 269.

See also, 2 High on Injunctions (4th Ed., par. 1415*i*); *Johnston Harvester Co.* v. *Meinhardt,* 60 How. Pr., 168.

Peaceably persuading a man to quit work when he has a right to quit is not an unlawful thing to do. This has been asserted by courts in this state and elsewhere so often that it is unnecessary to cite any authorities. No court in this or any other country has ever forbidden a man to go peaceably to his neighbor and urge him to give up service which he has the right to quit if he chooses. This is not *unlawful* persuasion.

While it is not proved in this case that O'Leary and Hinnenkamp were moved by ill-will towards the Greenwald Company to do what they did, still, even if they had been, the result would be the same. Malice towards the Greenwald Company would not make the persuasion amount to *unlawful* persuasion.

It is the law of Ohio that if an act may be done lawfully with a good motive, it is just as lawful if done with malice toward another.

A man has a right to build his house on his line, even if he shuts off his neighbor's light and air; and he has just as much right to build a spite fence on his line. *Letts* v. *Kessler,* 54 O. S., 73-82; *Kelly* v. *Ohio Oil Co.,* 57 O. S., 327; *Lancaster* v. *Hamberger,* 70 O. S., 164.

In conclusion, we are of the opinion that O'Leary and Hinnenkamp have not been proved guilty beyond a reasonable doubt of a violation of the injunction herein as set forth in the written charge against them.